UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MELISSA GIFFORD**, on behalf of her minor child **J.M.**, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>**CIERANT CORPORATION,**<br><br>    Defendant. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Melissa Gifford ("Plaintiff"), as parent and natural guardian of her minor child, J.M.**,** brings this action on behalf of her minor child and all others similarly situated against Defendant Cierant Corporation ("Cierant" or "Defendant"). Plaintiff seeks damages, restitution, and injunctive and declaratory relief on behalf of a class of individuals ("Class" or "Class Members") whose personally identifiable information ("PII") and protected health information ("PHI") (together, "Private Information") were compromised in the data breach discovered by Defendant. Plaintiff makes the following allegations upon personal knowledge as to her own actions, upon information and belief as to all other matters, and based on the investigation of counsel and matters of public record.

### NATURE OF THE ACTION

1.  Plaintiff brings this nationwide class action against Defendant Cierant as a result of a widespread and preventable data breach that compromised the personal and sensitive information of thousands of individuals across the United States, including Plaintiff's minor child.

2.    This action arises from Cierant's failure to adequately secure and protect PII and PHI entrusted to it by Plaintiff and the Class. The impacted information includes, among other things, names, addresses, dates of birth, treatment-related dates, generic descriptions of services received, provider names, medical record numbers, health plan beneficiary numbers, claims numbers, plan member account numbers, and premium information.

3.    The data breach (the "Data Breach") occurred on or about December 10, 2024, and stemmed from Cierant's use of a vulnerable third-party file transfer tool, VLTrader. An unauthorized actor exploited this vulnerability to gain access to Cierant's systems and files containing sensitive PII and PHI of health plan members, including minors.

4.    Despite knowing the severity of the breach, Cierant failed to provide timely and adequate notice to affected individuals, waiting until August 2025, approximately nine months after discovery, to notify Plaintiff and other Class Members. This delay exacerbated the harm by depriving victims of the opportunity to take prompt protective measures.

5.    Cierant's negligence in failing to implement adequate cybersecurity measures, combined with its failure to act swiftly to notify those affected, constitutes a clear disregard of consumer privacy and data security obligations.

6.    As a consequence of the Data Breach, Plaintiff and Class Members face a heightened and ongoing risk that their PII and PHI will be misused, including through identity theft and medical fraud.

7.    Plaintiff and Class Members must now undertake time-consuming and costly efforts to protect themselves, including monitoring their financial and medical accounts, placing fraud alerts, and considering credit freezes.

8.    In many cases, Plaintiff and Class Members will incur out-of-pocket expenses for credit monitoring services, identity theft protection, credit reports, or other protective measures to guard against misuse of their data.

9.    Defendant maintained the Private Information in a reckless manner. In particular, the Private Information was stored on systems known to be vulnerable to cyberattacks. The potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known and foreseeable risk to Defendant.

10.    Defendant disregarded the privacy and property rights of Plaintiff and Class Members by, inter alia, failing to implement adequate data security measures, failing to disclose that its systems were insufficiently robust to safeguard the Private Information, failing to take readily available steps to prevent the Data Breach, and failing to provide prompt, complete, and accurate notice once the breach was discovered.

11.    Plaintiff's and Class Members' Private Information is now in the hands of unauthorized third parties. With the Private Information obtained through the Data Breach, criminals can commit a wide range of fraudulent activities, including opening new financial accounts, taking out loans, filing false medical or insurance claims, applying for government benefits, filing fraudulent tax returns, and using minors' identities for long-term financial exploitation.

12.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft.

13.    Plaintiff and Class Members seek damages and equitable relief to remedy these harms, including compensatory damages, reimbursement of out-of-pocket costs, and injunctive

relief such as improvements to Defendant's data security systems, annual third-party audits, and long-term credit monitoring services funded by Defendant.

14.     Through this action, Plaintiff seeks to hold Cierant accountable for its negligent, reckless, and unlawful conduct, and to ensure that Plaintiff, her minor child, and all Class Members receive meaningful relief and protection.

## PARTIES

15.     Plaintiff Melissa Gifford is a resident of Millville, New Jersey. She brings this action individually and on behalf of her minor child, J.M.

16.     On or about August 14, 2025, Plaintiff received a written notification letter from Defendant, sent on behalf of her minor child's health plan, informing her that her minor child's Private Information had been compromised in the Data Breach.

17.     Defendant Cierant is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business located at 34 Executive Drive, Suite 4, Danbury, Connecticut 06810.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed Class; and at least one Class Member is a citizen of a state different from Defendant.

19.     This Court has general personal jurisdiction over Defendant because Defendant is incorporated in Connecticut and maintains its principal place of business in Danbury,

Connecticut. Accordingly, Defendant is "at home" in this State for purposes of general jurisdiction.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District, and pursuant to § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including decisions made at Defendant's headquarters regarding the storage, transmission, and protection of Class Members' Private Information.

## FACTUAL ALLEGATIONS

21.     Defendant is a Connecticut-based company that provides data-driven marketing, data management, and communication services to health plans and other organizations.

22.     Cierant specializes in what it calls "distributed marketing solutions"—software and services that help large organizations deliver personalized communications at scale.

23.     In the healthcare sector, Cierant works directly with health insurers and plan administrators to manage member communications. Its platforms and services are used to generate, print, and mail high volumes of plan documents and notices, including but not limited to explanations of benefits (EOBs"), insurance appeals letters, enrollment materials, plan benefit summaries, and regulatory compliance mailings.

24.     To perform these services, Cierant receives, stores, and processes extensive volumes of PII and PHI belonging to health plan members, including minors.

25.     Cierant has publicly represented that it provides "secure, compliant data-driven communications" and that its platforms enable insurers to deliver "highly regulated" health plan communications in a reliable and efficient manner.

26.    Cierant thus held itself out as having both the technical capabilities and the compliance infrastructure necessary to safeguard sensitive information under federal and state privacy laws, including the Health Insurance Portability and Accountability Act ("HIPAA").

27.    In practice, however, Cierant relied on third-party file transfer software known as Cleo's VLTrader to transmit and manage large files of health plan member data.

28.    On or about December 10, 2024, Cierant discovered that unauthorized parties had exploited vulnerabilities in VLTrader to gain access to files processed and transmitted through Cierant's systems.

29.    VLTrader is a third-party tool marketed for "secure file transfer" used by enterprises to send and receive large volumes of sensitive data. Cierant relied on VLTrader to transmit and process health plan member information for its insurer clients.

30.    On information and belief, cybercriminals exploited a previously unknown or "zero-day" vulnerability in VLTrader, which allowed them to bypass security controls and gain access to files being transmitted through and stored within Cierant's systems.

31.    Once inside, the attackers obtained access to files containing health plan member data that Cierant was processing on behalf of its health plan clients.

32.    As a result of this exploitation, unauthorized actors acquired files containing PII and PHI of approximately 232,506 individuals, including Plaintiff's minor child.

33.    According to Cierant's notice, the categories of Private Information that may have been exposed included:

   • Full names

   • Addresses

   • Dates of birth

• Treatment-related dates

• Generic descriptions of services received

• Provider names

• Medical record numbers

• Health plan beneficiary numbers

• Claims numbers and/or plan member account numbers

34.     Cierant's services require it to process this information on behalf of health plans for mailings such as EOBs and appeals decisions. In many cases, Cierant also processed premium billing information, account identifiers, and internal claim tracking numbers for its insurer clients.

35.     This information is highly sensitive and valuable to criminals because it can be used to commit identity theft, submit false health insurance claims, and open fraudulent accounts.

36.     Minors are especially vulnerable because misuse of their PII and PHI often goes undetected for years, until they reach adulthood and begin applying for credit, education loans, or employment.

37.     Despite confirming the breach in December 2024, Cierant did not provide timely notice to Plaintiff or other affected individuals.

38.     Instead, Cierant delayed disclosure for months, issuing a general public notice in July 2025, more than six months after discovering the breach.

39.     Plaintiff herself did not receive direct written notice until a letter dated August 14, 2025, which was sent by Cierant on behalf of her minor child's health plan.

40.     The August 14, 2025, letter explained that Cierant had processed her minor child's member data in connection with health plan mailings, and that this data "may have been impacted" by the Data Breach.

41.     The letter further acknowledged that it was being sent "on behalf of your health plan" because Cierant had processed her minor child's information in connection with mailing explanations of benefits and health insurance appeals.

42.     Nearly all states require companies to notify individuals of a data breach "in the most expedient time possible and without unreasonable delay." Many states impose statutory deadlines of 30 to 60 days for notification.

43.     Cierant's seven-plus month delay, culminating in Plaintiff's receipt of a letter dated August 14, 2025, plainly exceeded these statutory deadlines.

44.     Cierant has offered no adequate justification for this unreasonable delay.

45.     As a result, Plaintiff and other Class Members were deprived of the opportunity to take timely steps to mitigate the risks of identity theft, medical fraud, and other misuse of their information.

46.     Cierant's failure to secure sensitive information and to provide prompt, accurate, and complete notice violated industry standards, federal guidelines, state data breach notification statutes, and its own stated privacy assurances.

47.     Plaintiff and Class Members have suffered ascertainable losses as a direct result of the Data Breach, including the loss of value of their Private Information, out-of-pocket costs for protective measures, time spent monitoring financial and medical accounts, and emotional distress caused by the loss of privacy and risk of fraud.

48.     The Data Breach was entirely preventable. Reasonable cybersecurity protocols—including timely patching of VLTrader, encryption of files, and effective network monitoring—could have prevented or at least mitigated the attack.

49.    Cierant's conduct in failing to safeguard the Private Information of Plaintiff's minor child and the Class, and in delaying disclosure of the Data Breach for more than seven months, has directly caused and will continue to cause harm.

**Cierant's Privacy Policy**

50.    Cierant publishes a privacy policy on its website promising to protect customers' personal data. It states that Cierant uses "appropriate technical and organizational measures" to safeguard personal information from loss, misuse, and unauthorized access.[1]

51.    In the course of collecting and processing Private Information from health plan members, including Plaintiff and Class Members, Cierant promised to maintain confidentiality and adequate security of such information through its applicable privacy policies and in compliance with statutory privacy requirements applicable to its industry. Cierant was aware of and had obligations created by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),[2] the Federal Trade Commission Act ("FTCA"),[3] state data breach statutes, contracts with its health plan clients, industry standards, and common law duties to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

---

[1]  Cierant Corporation, *Privacy Policy*, https://www.cierant.com/privacy-policy/ (last visited Aug. 18, 2025)

[2]  Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 26, 29, and 42 U.S.C.); see also 45 C.F.R. pts. 160 & 164 (2025).

[3]  Federal Trade Commission Act § 5, 15 U.S.C. § 45(a) (2025).

52.     Plaintiff and Class Members reasonably relied on Cierant's promises and duties to keep their sensitive Private Information confidential, securely maintained, and used only for legitimate business purposes, and to make only authorized disclosures of such information.

53.     Consumers, in general, expect and demand that businesses entrusted with highly sensitive data, especially Social Security numbers and health information, will implement adequate safeguards to secure it against unauthorized access.

54.     Cierant had a duty to adopt reasonable measures to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure to third parties, which it failed to do despite being on notice of vulnerabilities in its data transfer platform and material deficiencies in its security systems.

55.     Because of the targeted cyberattack, malicious actors were able to gain access to and obtain Private Information from Cierant's systems, including the sensitive data of Plaintiff and Class Members.

56.     Upon information and belief, the Private Information stored and transmitted on Cierant's network was not encrypted.

57.     Plaintiff's Private Information was accessed and stolen in the Data Breach. Plaintiff reasonably believes that her stolen Private Information is available for sale on the dark web because that is the well-documented modus operandi of cybercriminals who target businesses that collect highly sensitive information.

58.     As a result of the Data Breach, Cierant now instructs Class Members to take steps to mitigate identity theft, an implicit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

59.     Unlike many organizations that experience data breaches, Cierant did not provide Plaintiff or Class Members with complimentary credit monitoring or identity theft protection services. This failure further underscores Cierant's disregard for the risks created by the Data Breach.

60.     Cierant had obligations created by contract, industry standards, and common law to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

61.     Plaintiff suffered actual injury from having Private Information exposed as a result of the Data Breach, including but not limited to: (a) damages to and diminution in the value of her Private Information, a form of intangible property that Plaintiff entrusted to Cierant; (b) loss of privacy; and (c) imminent and impending injury arising from the increased risk of fraud and identity theft.

62.     As a result of the Data Breach, Plaintiff and Class Members will continue to be at heightened risk for fraud and the attendant damages for years to come.

**Cierant Had a Duty to Secure Class Members Private Information**

63.     At all relevant times, Cierant had a duty to Plaintiff and Class Members to properly secure their PII and PHI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to promptly notify Plaintiff and Class Members when Cierant became aware that their PII and PHI was compromised.

64.     Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information.

11

Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

65.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

     a.   Maintaining a secure firewall configuration;

     b.   Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

     c.   Monitoring for suspicious or irregular traffic to servers;

     d.   Monitoring for suspicious credentials used to access servers;

     e.   Monitoring for suspicious or irregular activity by known users;

     f.   Monitoring for suspicious or unknown users;

     g.   Monitoring for suspicious or irregular server requests;

     h.   Monitoring for server requests for PII;

     i.   Monitoring for server requests from VPNs; and

     j.   Monitoring for server requests from Tor exit nodes.

66.     Because of this targeted, intentional cyberattack, data thieves were able to gain access to and obtain data from Cierant that included the Private Information of Plaintiff and Class Members.

67.     Cierant admits that the files exfiltrated from Cierant contained at least the following information of Plaintiff and Class Members: names, addresses, dates of birth, banking information and Social Security numbers.

68.     Upon information and belief, the Private Information stored on Cierant's network was not encrypted.

69.     Plaintiff's Private Information was accessed and stolen in the Data Breach. Plaintiff reasonably believed her stolen Private Information is currently available for sale on the Dark Web because that is the *modus operandi* of cybercriminals who target businesses that collect highly sensitive Private Information.

70.     As a result of the Data Breach, Cierant now encourages Class Members to take steps to mitigate identity theft, a tacit admission of the imminent risk of identity theft faced by Plaintiff and Class Members.

71.     Cierant is encouraging Plaintiff and Class Members to enroll in credit monitoring and identity theft restoration services is an acknowledgment that the impacted consumers are subject to a substantial and imminent threat of fraud and identity theft.

72.     Cierant had obligations created by contract, industry standards, and common law to keep Plaintiff' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

73.     Cierant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing PII and PHI.

**Defendant Acquires, Collects, and Stores Plaintiff' and Class Members' PII and PHI**

74.     Cierant acquires, collects, and stores a massive amount of PII and PHI. By obtaining, collecting, and using Plaintiff's and Class Members' PII and PHI for its own financial gain and business purposes, Defendant assumed legal and equitable duties and knew that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

75.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI.

**The Data Breach Was a Foreseeable Risk of which Defendant Was on Notice**

76.    Prior to the breach involving Cierant, Cleo had experienced well-documented cybersecurity vulnerabilities in its file transfer software, which were publicly disclosed and widely reported in the cybersecurity community.[4]

77.    In particular, Cleo's file transfer software was associated with two critical vulnerabilities—CVE-2024-50623, disclosed in October 2024, and CVE-2024-55956, disclosed in December 2024.[5] These vulnerabilities permitted unauthorized uploading and downloading of files and allowed remote execution of commands, including on platforms used by enterprise customers such as Cierant.

78.    These vulnerabilities were actively exploited by threat actors, including the Clop ransomware group, during the same timeframe as the attack on Cierant's systems.[6] Cleo's own advisories acknowledged the need for repeated patching as earlier mitigations proved incomplete.

79.    The widespread publicity surrounding these vulnerabilities—including entries in the National Vulnerability Database, their inclusion in the Cybersecurity and Infrastructure Security Agency's ("CISA") Known Exploited Vulnerabilities Catalog, and advisories issued by

---

[4]    Cleo, *Product Security Advisory: CVE-2024-50623* (Oct. 15, 2024), https://support.cleo.com/hc/en-us/articles/27140294267799-Cleo-Product-Security-Advisory-CVE-2024-50623.

[5]    *Id*.; Cleo, *Product Security Update: CVE-2024-55956* (Dec. 9, 2024), https://support.cleo.com/hc/en-us/articles/28408134019735-Cleo-Product-Security-Update-CVE-2024-55956.

[6]    Rapid7, *Widespread Exploitation of Cleo File Transfer Software (CVE-2024-50623)* (Dec. 10, 2024), https://www.rapid7.com/blog/post/2024/12/10/etr-widespread-exploitation-of-cleo-file-transfer-software-cve-2024-50623; Cybereason, *CVE-2024-55956: Clop Ransomware Exploitation of Cleo Vulnerability* (Dec. 2024), https://www.cybereason.com/blog/cve-2024-55956-cleo-vulnerability.

security researchers—placed Cierant on heightened notice of the risks of entrusting sensitive personal and health-related data to Cleo's platform.[7]

80.     As a large enterprise with access to vendor risk assessment tools, third-party security monitoring services, and contractual compliance mechanisms, Cierant had both the ability and the obligation to identify and mitigate these known risks.

81.     Cierant's failure to conduct sufficient due diligence, impose stricter vendor compliance obligations, or monitor Cleo's patching and threat-mitigation practices represents a breakdown in basic data governance.

82.     As a result, Cierant failed to prevent the breach despite numerous red flags that should have prompted enhanced protections or vendor re-evaluation well before the incident occurred.

83.     Individuals place a high value not only on their PII, but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of lost time trying to fight against the impact of identity theft.

84.     A data breach increases the risk of becoming a victim of identity theft. Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice, "[a] direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses

---

[7] Cybersecurity & Infrastructure Sec. Agency, *Known Exploited Vulnerabilities Catalog* (Dec. 2024), https://www.cisa.gov/known-exploited-vulnerabilities-catalog.

that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss."[8]

85.    Additionally in 2021, there was a 15.1% increase in cyberattacks and data breaches since 2020. Over the next two years, in a poll done on security executives, they have predicted an increase in attacks from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[9]

86.    In light of high profile data breaches at other industry leading companies, including Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its computer network would be targeted by cybercriminals.

87.    Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, and hopefully can ward off a cyberattack.

88.    According to an FBI publication, "[r]ansomware is a type of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. Ransomware attacks can cause costly disruptions to

---

[8] "Victims of Identity Theft, 2018," U.S. Department of Justice (April 2021, NCJ 256085) available at: https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last accessed Dec. 5, 2024).
[9] https://www.forbes.com/sites/chuckbrooks/2022/06/03/alarming-cyber-statistics-for-mid-year2022-that-you-need-to-know/?sh=176bb6887864 (last accessed Dec. 5, 2024).

and the loss of critical information and data." [10] This publication also explains that "[t]he FBI does not support paying a ransom in response to a ransomware attack. Paying a ransom doesn't guarantee you or your organization will get any data back. It also encourages perpetrators to target more victims and offers an incentive for others to get involved in this type of illegal activity."[11]

89.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Cierant failed to take appropriate steps to protect the PII of Plaintiff and the proposed Class from being compromised.

### At All Relevant Times Defendant Had a Duty to Plaintiff and Class Members to Properly Secure their Private Information

90.    At all relevant times, Cierant had a duty to Plaintiff and Class Members to properly secure their PII and PHI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and to promptly notify Plaintiff and Class Members when Cierant became aware that their PII and PHI was compromised.

91.    Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures and conduct proper due diligence in their use of Cleo, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiff and Class Members.

---

[10] https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scamsand-crimes/ransomware (last accessed Dec. 27, 2024).
[11] *Id.*

92.     Security standards commonly accepted among businesses that store PII and PHI using the internet include, without limitation:

    a.   Maintaining a secure firewall configuration;

    b.   Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

    c.   Monitoring for suspicious or irregular traffic to servers;

    d.   Monitoring for suspicious credentials used to access servers;

    e.   Monitoring for suspicious or irregular activity by known users;

    f.   Monitoring for suspicious or unknown users;

    g.   Monitoring for suspicious or irregular server requests;

    h.   Monitoring for server requests for PII;

    i.   Monitoring for server requests from VPNs; and

    j.   Monitoring for server requests from Tor exit nodes.

93.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[12] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[13]

---

[12] 17 C.F.R. § 248.201 (2013).
[13] *Id.*

94.     The ramifications of Defendant's failure to keep consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security and driver's license numbers, fraudulent use of that information and damage to victims including Plaintiff and the Class may continue for years.

**The Value of Private Information and the Effects of Unauthorized Disclosure**

95.     At all relevant times, Defendant was well aware that the Private Information it collects from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

96.     Private Information is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[14] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII and PHI on multiple underground Internet websites, commonly referred to as the dark web.

97.     While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[15]

98.     The ramifications of Cierant's failure to keep Plaintiff and Class Member's Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

---

[14] Federal Trade Commission, *Warning Signs of Identity Theft, available at:* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed July 20, 2022).

[15] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at:* https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed July 20, 2022).

99.     Further, criminals often trade stolen Private Information on the "cyber black-market" for years following a breach. Cybercriminals can post stolen Private Information on the internet, thereby making such information publicly available.

100.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [16] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[17]

101.     The injuries to Plaintiff and Class Members were directly and proximately caused by Cierant's failure to maintain or implement adequate data security measures for Plaintiff and Class Members.

### Cierant Failed to Comply with FTC Guidelines

102.     Cierant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

---

[16] *See* Medical ID Theft Checklist, *available at:* https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last accessed July 20, 2022).

[17] Experian, *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches ("Potential Damages"), available at:* https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last accesses July 20, 2022).

103.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[18]

104.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[19] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

105.    The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[20]

106.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"),

---

[18] Federal Trade Commission, *Start With Security: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf    (last accessed July 20, 2022).

[19] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed July 20, 2022).

[20] FTC, *Start With Security*, *supra* note 16.

15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

107.     Regulatory guidance and precedent have established that companies are responsible for safeguarding personal data entrusted to them, even when it is handled or processed by third-party vendors. The FTC has repeatedly held data controllers accountable for security failures involving outsourced services, emphasizing that liability cannot be outsourced.

108.     The FTC has explicitly warned that businesses must perform due diligence on service providers, require contractual data protection obligations, and continuously monitor vendor compliance. These obligations are fundamental to fulfilling a company's duty to implement reasonable security practices.

**Concrete Injuries are Caused by Defendant's Inadequate Security**

109.     Plaintiff and Class Members reasonably expected that Defendant would provide adequate security protections for their PII and PHI. Class Members provided Defendant with sensitive personal information, including names, addresses, dates of birth, health insurance information, and medical or treatment-related information.

110.     Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. Plaintiff and other individuals whose PII and PHI were entrusted to Defendant understood and expected that, as part of that relationship, they would receive reasonable data security protections. In fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received data security of lesser value than they reasonably expected, and they suffered pecuniary injury as a result.

111.     Cybercriminals intentionally target and exfiltrate PII and PHI to exploit it. Class Members are therefore now, and for the rest of their lives will be, at a heightened and substantial

risk of identity theft, medical identity theft, and fraud. Plaintiff has also incurred (and will continue to incur) damages in the form of, inter alia, loss of privacy and costs of engaging adequate credit monitoring and identity theft protection services.

112.    The cybercriminals who obtained Class Members' PII and PHI may exploit the information by selling it on so-called "dark markets" or the "dark web." Having obtained names, addresses, dates of birth, health insurance information, and other identifiers, cybercriminals can pair this data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- obtaining medical services or prescriptions in the victim's name;
- submitting false insurance claims;
- applying for credit cards or loans;
- impersonating minors online to facilitate additional fraud or exploitation; and
- using stolen identifiers to create synthetic identities that may be linked back to the minor as they age.

113.    In addition, if a Class Member's health insurance or medical information is misused to create false records or fraudulent claims, the Class Member may later encounter difficulties obtaining proper medical treatment, accurate insurance coverage, or financial aid.

114.    As a direct and proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiff and the other Class Members have been deprived of the value of their PII and PHI, for which there is a well-established national and international market.

115.    PII and PHI have a long shelf-life because they contain persistent identifiers that cannot easily be changed, can be used in multiple ways, and typically take time for fraudulent misuse to be discovered.

116.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have placed Plaintiff and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft, medical identity theft, and fraud.

117.     As a result of the Data Breach, Plaintiff and Class Members have already suffered injuries and remain at a substantial and imminent risk of future identity theft and misuse of their personal information.

## CLASS ALLEGATIONS

118.     Plaintiff brings this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

119.     The  Class that Plaintiff seeks to represent is defined as follows:

**All persons in the United States whose personally identifiable information ("PII") and/or protected health information ("PHI") was accessed, acquired, or compromised in the data breach discovered by Cierant Corporation on or about December 10, 2024.**

120.     Excluded from the Class are: (a) Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors; (b) Defendant's current and former employees and subcontractors involved in the provision of services relevant to this litigation; (c) any individuals who timely and validly request exclusion from the Class; (d) any federal, state, or local government entity, including their agencies, divisions, departments, and subdivisions; and (e) any judicial officer presiding over this action and members of his or her immediate family.

121.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

122.    Numerosity, Fed. R. Civ. P. 23(a)(1): The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of individuals whose PII and/or PHI was compromised in the Data Breach.

123.    Commonality, Fed. R. Civ. P. 23(a)(2) and 23(b)(3): Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. These common issues include, but are not limited to:

a. Whether and when Defendant actually learned of the Data Breach and whether its response was adequate;

b. Whether Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in collecting, storing, and safeguarding their PII/PHI;

c. Whether Defendant breached that duty;

d. Whether Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of Plaintiff's and Class Members' PII/PHI;

e. Whether Defendant acted negligently in failing to protect Plaintiff's and Class Members' PII/PHI;

f. Whether Defendant knew or should have known that its security measures were inadequate;

g. Whether Defendant adequately remediated vulnerabilities and risks that permitted the Data Breach to occur;

h. Whether Defendant's conduct caused damages to Plaintiff and Class Members;

i. Whether Defendant failed to provide timely and adequate notice of the Data Breach;

j. Whether Plaintiff and Class Members are entitled to damages, credit monitoring, or other monetary relief; and

k. Whether Defendant's conduct violated common law or statutory duties as alleged in this Complaint.

124.    Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of the Class because all Class Members had their PII and/or PHI compromised as a result of the Data Breach caused by Defendant's misconduct.

125.    Policies Generally Applicable to the Class: Defendant has acted or refused to act on grounds generally applicable to the Class, making injunctive relief appropriate with respect to the Class as a whole. Defendant's conduct and policies applied uniformly to all Class Members.

126.    Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that conflict with those of the Class and seeks the same relief as other Class Members. Plaintiff has retained counsel experienced in complex consumer and data breach class actions who are qualified to represent the Class.

127.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment allows a large number of similarly situated individuals to pursue their claims in one forum, economizing resources and avoiding the burden of repetitive litigation. Absent a class action, many Class Members would be unable to obtain relief given the expense of pursuing individual actions against a large corporation.

128.    The class action device is particularly appropriate here because Defendant would otherwise retain an unfair advantage from its misconduct by exploiting its vastly superior resources against individuals with relatively modest claims. Class action treatment also avoids the risk of inconsistent judgments, promotes judicial efficiency, and ensures that Class Members' rights are fairly and uniformly protected.

129.    This action is manageable as a class action. Defendant's uniform conduct, the availability of common proof, and the ascertainable identities of Class Members from Defendant's records eliminate any significant manageability concerns.

130.    Adequate notice can be provided to Class Members using the contact information maintained in Defendant's records.

131.    Unless the Court issues a Class-wide injunction, Plaintiff and Class Members remain at risk that Defendant will continue failing to properly safeguard their PII/PHI, will inadequately notify victims of breaches, and will persist in the unlawful practices described herein.

132.    Defendant has acted or refused to act on grounds generally applicable to the Class, rendering final injunctive or corresponding declaratory relief appropriate under Fed. R. Civ. P. 23(b)(2).

133.    In addition, particular issues under Rule 23(c)(4) are appropriate for certification because they present common questions, the resolution of which would materially advance this litigation. These issues include, but are not limited to:

a. Whether Defendant owed a duty of care to Plaintiff and Class Members in safeguarding their PII/PHI;

b. Whether Defendant breached that duty;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards regarding data security;

d. Whether Defendant failed to implement reasonable measures to prevent or mitigate the Data Breach; and

e. Whether Plaintiff and Class Members are entitled to damages, injunctive relief, and/or punitive damages as a result of Defendant's conduct.

## CAUSES OF ACTION

### Count I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

134.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

135.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of the regular course of its business operations. Plaintiff and Class Members were entirely dependent on Defendant to use reasonable measures to safeguard their Private Information and were vulnerable to the foreseeable harm described herein should Defendant fail to safeguard their Private Information.

136.    By collecting and storing this data in its computer property, and sharing it, and using it for commercial gain, Defendant assumed a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' Private Information held within it— to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of their security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

137.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

138.    Defendant had a duty to employ reasonable security measures under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair ... practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

139.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

140.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

141.    Defendant gathered and stored the Private Information of Plaintiff and Class Members as part of its business of soliciting its services to its clients and its clients' patients, which solicitations and services affect commerce.

142.    Defendant violated the FTC Act by failing to use reasonable measures to protect the Private Information of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

143.    Defendant breached its duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff' and Class Members' Private Information, and by failing to provide prompt notice without reasonable delay.

144.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and those who received its services, which is recognized by laws and regulations, as well as common law.

145.     Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach or data breach.

146.     Defendant's multiple failures to comply with applicable laws and regulations constitute negligence *per se*.

147.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations, but also because Defendant is bound by industry standards to protect confidential Private Information.

148.     Defendant had full knowledge of the sensitivity of the Private Information, the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully disclosed, and the importance of adequate security.

149.     Plaintiff and Class Members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class Members had no ability to protect their Private Information that was in Defendant's possession.

150.     Defendant was in a special relationship with Plaintiff and Class Members with respect to the hacked information because the aim of Defendant's data security measures was to benefit Plaintiff and Class Members by ensuring that their personal information would remain protected and secure. Only Defendant was in a position to ensure that its systems were sufficiently secure to protect Plaintiff' and Class Members' Private Information. The harm to Plaintiff and Class Members from its exposure was highly foreseeable to Defendant.

151.     Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to

reasonably safeguard such data and providing notification to Plaintiff and the Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

152.    Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

153.    Defendant had duties to protect and safeguard the Private Information of Plaintiff and the Class from being vulnerable to compromise by taking common-sense precautions when dealing with sensitive Private Information. Additional duties that Defendant owed Plaintiff and the Class include:

      a.   To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

      b.   To protect Plaintiff's and Class Members' Private Information in its possession by using reasonable and adequate security procedures and systems; and

      c.   To promptly notify Plaintiff and Class Members of any breach, security incident, unauthorized disclosure, or intrusion that affected or may have affected their Private Information.

154.    Only Defendant was in a position to ensure that its systems and protocols were sufficient to protect the Private Information that had been entrusted to them.

155.    Defendant breached its duties of care by failing to adequately protect Plaintiff's and Class Members' Private Information. Defendant breached its duties by, among other things:

a.  Failing to exercise reasonable care in obtaining, retaining, securing, safeguarding, protecting, and deleting the Private Information in its possession;

b.  Failing to protect the Private Information in its possession using reasonable and adequate security procedures and systems;

c.  Failing to adequately and properly audit, test, and train its employees regarding how to properly and securely transmit and store Private Information;

d.  Failing to adequately train its employees to not store unencrypted Private Information in their personal files longer than absolutely necessary for the specific purpose that it was sent or received;

e.  Failing to consistently enforce security policies aimed at protecting Plaintiff's and Class Members' Private Information;

f.  Failing to mitigate the harm caused to Plaintiff and the Class Members;

g.  Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

h.  Failing to promptly notify Plaintiff and Class Members of the Data Breach that affected their Private Information.

156.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

157.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

158.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

159.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigating damages.

160.    As a result of the Data Breach, Plaintiff and Class Members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to the fraudulent use of the Private Information, and closely reviewing and monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies.

161.    Defendant's wrongful actions, inaction, and omissions constituted (and continue to constitute) common law negligence.

162.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

163.    Plaintiff and the Class have suffered injury and are entitled to actual damages in amounts to be proven at trial.

**Count II**
**NEGLIGENCE *Per Se***
**(On behalf of Plaintiff and the Class)**

164.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

165.    Section 5 of the FTC Act, 15 U.S.C. § 45 prohibits, "unfair...practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff and Class Members' Private Information.

166.    Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information and by failing to comply with industry standards.

167.    Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendants' systems. Plaintiff was required to provide PII and PHI to Defendants. Plaintiff and Class Members entrusted their PII and PHI to Defendant with the understanding that Defendant would safeguard their PII and PHI.

168.    Class Members are within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

169.    Pursuant to HIPAA, 42 U.S.C. § 1302d et seq., Defendant had a duty to implement reasonable safeguards to protect Plaintiff and Class Members' Private Information.

170.    Pursuant to HIPAA, Defendant had a duty to render the electronic PHI they maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key." See 45 C.F.R. § 164.304 (defining "encryption").

171.    Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

172.    But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

173.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known

that they failed to meet their duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

174.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## Count III
## BREACH OF IMPLIED CONTRACT
### (On behalf of Plaintiff and the Class)

175.     Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

176.     Plaintiff and Class Members provided their PII to Defendant or its third-party agents in exchange for Cierant's services. In exchange for the PII, Defendant promised to protect their PII from unauthorized disclosure.

177.     At all relevant times Defendant promulgated, adopted, and implemented written a Privacy Policy whereby it expressly promised Plaintiff and Class Members that it would only disclose PII and/or PHI under certain circumstances, none of which relate to the Data Breach.

178.     On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff' and Class Members' Private Information would remain protected.

179.     Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of

35

their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the Private Information only under conditions that kept such information secure and confidential.

180.    When Plaintiff and Class Members provided their Private Information to Defendant as a condition of relationship, they entered into implied contracts with Defendant pursuant to which Defendant agreed to reasonably protect such information.

181.    Defendant required Class Members to provide their Private Information as part of Defendant's regular business practices.

182.    In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

183.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.  Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of its implied promise to monitor its computer systems and networks to ensure that it adopted reasonable data security measures.

184.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

185.    Defendant breached its implied contracts with Class Members by failing to safeguard and protect their Private Information.

186.    As a direct and proximate result of Defendant's breaches of the implied contracts, Class Members sustained damages as alleged herein.

187.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

188.    Plaintiff and Class Members are also entitled to nominal damages for the breach of implied contract.

189.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate long term credit monitoring to all Class Members for a period longer than the grossly inadequate one-year currently offered.

**Count IV**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

190.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

191.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of the provision of their Private Information and Defendant would be unable to engage in its regular course of business without that Private Information.

192.    Defendant appreciated that a monetary benefit was being conferred upon it by Plaintiff and Class Members and accepted that monetary benefit.

193.     However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof.  Specifically, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Personal Information.  Instead of providing a reasonable level of security that would have prevented the

Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

194.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures.

195.    Defendant acquired the Private Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged. If Plaintiff and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their Private Information to Defendant.

196.    Plaintiff and Class Members have no adequate remedy at law.  As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future

costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

197.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

198.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**Count V**
**DECLARATORY JUDGMENT**
**(On behalf of Plaintiff and the Class)**

199.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

200.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

201.    An actual controversy has arisen in the wake of Defendant's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Private Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information.

202.    Plaintiff alleges that Defendant's data security measures remain inadequate. Plaintiff will continue to suffer injury as a result of the compromise of their Private Information

39

and remain at imminent risk that further compromises of their Private Information will occur in the future.

203.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a. Cierant continues to owe a legal duty to secure consumers' Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes;

      b. Cierant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Private Information.

204.    The Court also should issue corresponding prospective injunctive relief requiring Cierant to employ adequate security protocols consistent with law and industry standards to protect consumers' Private Information.

205.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Cierant. The risk of another such breach is real, immediate, and substantial. If another breach at Cierant occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

206.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Cierant if an injunction is issued. Among other things, if another massive data breach occurs at Cierant or Cleo, Plaintiff and Class Members will likely be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Cierant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Cierant has a pre-existing legal obligation to employ such measures. Issuance of the requested injunction will not do a disservice to the public interest.

207.    On the contrary, such an injunction would benefit the public by preventing another data breach at Cierant, thus eliminating the additional injuries that would result to Plaintiff and the millions of consumers whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for judgment as follows:

A.   For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

B.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff' and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures of its Data Breach to Plaintiff and Class Members;

C.   For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

D.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E.   For declaratory relief as requested;

F.   Ordering Defendant to pay for lifetime credit monitoring services for Plaintiff and the Class;

G.   For an award of actual damages, compensatory damages, and statutory damages, in an amount to be determined, as allowable by law;

H.   For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

I.   Pre- and post-judgment interest on any amounts awarded; and

J.   Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 21, 2025

**Respectfully submitted,**

By: /s/ *James J. Reardon, Jr.*
James J. Reardon, Jr. (ct13802)
**REARDON SCANLON LLP**
45 South Main Street, Suite 305
Telephone: 860-955-9455
Facsimile: 860-920-5242
james.reardon@reardonscanlon.com

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
Melissa R. Emert*
Gary S. Graifman*
135 Chestnut Ridge Road
Suite 200
Montvale, NJ 07645
Telephone : 201-391-7000
Facsimile : 201-307-1086
memert@kgglaw.com
ggraifman@kgglaw.com

*Attorneys for Plaintiff and the Class*

*\*pro hac vice forthcoming*